John HAMMOND, Plaintiff,

v.

Raymond J. DONOVAN,[1] U. S. Secretary
of Labor, et al., Defendants.

No. 79 4144 CV C 3.

United States District Court,
W. D. Missouri, C. D.

May 14, 1982.

Walter W. Nowotny, Jr., Jefferson City, Mo., for plaintiff.

Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., James D. Henry, Associate Sol., Heidi D. Miller and Steven J. Mandel, Attys., Civ. Rights Div., U.S. Dept. of Labor, Washington, D. C., for defendants.

## OPINION

ELMO B. HUNTER, Senior District Judge.

This action pends on the cross motions of the parties for summary judgment. Both parties have represented to the Court that there are no factual issues to be determined and the only issues raised are legal in nature and may be resolved by summary judgment. *See* F.R.Civ.P., Rule 56.

Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that the Missouri Division of Employment Security (hereinafter MDES) is a "contractor" as that term is used in the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended, 38 U.S.C. § 2011 et seq. (hereinafter Vietnam Veterans Act) and that the Secretary of Labor has jurisdiction to hear the plaintiff's complaint that MDES has not complied with the provisions of the Vietnam Veterans Act.

1. Raymond J. Donovan, U. S. Secretary of Labor is substituted for F. Ray Marshall as a Federal defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

The plaintiff is a disabled veteran[2] and is employed by MDES. The Vietnam Veterans Act provides that employers who enter into contracts with the federal government shall give special emphasis to the employment of disabled or Vietnam era veterans. Specifically, 38 U.S.C. § 2012 provides, in part, that:

(a) Any contract in the amount of $10,000 or more entered into by any department or agency for the procurement of personal property and non-personal services (including construction) for the United States, shall contain a provision requiring that the party contracting with the United States shall take affirmative action to employ and advance in employment qualified special disabled veterans and veterans of the Vietnam era.

In August of 1976, the plaintiff filed a complaint with the Secretary of Labor, pursuant to 38 U.S.C. § 2012(b), alleging that his employer, MDES, had not complied with the provisions of the Vietnam Veterans Act. Ultimately, the Secretary dismissed the complaint on the grounds that there was no jurisdiction to hear the matter because MDES had not entered into a contract with the federal government. This action followed.

The plaintiff's position is that a contractual relationship existed and still exists between MDES and the federal government bringing MDES under the jurisdiction of the Vietnam Veterans Act. Though the term "contract" is not specifically defined in the Vietnam Veterans Act, the regulations promulgated thereunder lend some guidance. In 41 C.F.R. 60–250.2, the term "contract" is defined, for purposes of the Vietnam Veterans Act, as "any government contract" which

... means any agreement or modification thereof between any contracting agency and any person for the furnishing of supplies or services or for the use of real or personal property including lease arrangements.

The plaintiff argues that MDES has entered three specific contractual relationships with the federal government.

The first contractual relationship asserted by plaintiff involves the establishment of a system of public employment offices in the State of Missouri. In 1933, the Wagner-Peyser Act, 29 U.S.C. § 49 et seq., became law. Its purpose was to promote the establishment and maintenance of a national system of public employment offices within the several states. 29 U.S.C. § 49b. *See also NAACP, Western Region v. Brennan,* 360 F.Supp. 1006, 1008 (D.D.C.1973). In furtherance of this purpose, the Wagner-Peyser Act, and the regulations promulgated thereunder, provide that those states which comply with the provisions of the Act shall be eligible to receive federal appropriations. 29 U.S.C. § 49k, 20 C.F.R. 601–604 and 20 C.F.R. 651–654. One of the provisions of the Wagner-Peyser Act related to the establishment of a veteran's employment service through the state employment office. 29 U.S.C. § 49b, 20 C.F.R. 602.5 and 20 C.F.R. 604.4.[3] Since 1937, the State of Missouri has established and maintained an approved system of public employment offices, including providing a veteran's employment service, and has received federal appropriations under the Wagner-Peyser Act and 38 U.S.C. § 2006. Other funding

---

**2.** As a disabled veteran, the plaintiff comes under the scope of the Vietnam Veterans Act. 38 U.S.C. § 2011(1).

**3.** The requirement of establishing and maintaining a veteran's employment service under the Wagner-Peyser Act was supplemented by the Servicemen's Readjustment Act of 1944, as amended, 38 U.S.C. §§ 2001–2008, which created a veteran's employment service within the Department of Labor, whose purpose it was to coordinate job training, counseling and placement services for veterans. 38 U.S.C. § 2002. Pursuant to this Act, Federal employees were

assigned to each state to serve as employment representatives, assistant representatives and staff, with the responsibility to execute the Department of Labor's policy relating to the counseling and placement of veterans through the national system of public employment offices established by the Wagner-Peyser Act. 38 U.S.C. § 2003. Each state is required to provide adequate and appropriate facilities for those personnel. 20 C.F.R. 653.222. Funds for these facilities are provided to the states by the Department of Labor. 38 U.S.C. § 2006.

for the state public employment offices comes pursuant to Title III of the Social Security Act and the Appropriations Act. *See NAACP, Western Region v. Brennan, supra* at 1009.

The plaintiff argues that the submission of a plan, pursuant to the Wagner-Peyser Act, to provide a system of public employment offices, together with a veteran's employment service, constitutes an offer and the approval of the plan with disbursements of federal funds to the state constitutes acceptance of the offer, thereby creating a contractual relationship between the state and the federal government. The plaintiff asserts that MDES furnishes supplies, services, and the use of real and personal property to the United States Department of Labor in exchange for federal appropriations.

Second, the plaintiff argues that an agreement between MDES and the Employment and Training Administration of the Department of Labor constitutes a contract. The agreement provides that MDES shall furnish certain staff members to the Region VII Training Center, a branch of the Employment and Training Administration, also known as the Breech Academy. According to the most recent version of the agreement available to the Court,[4] it provides that staff from MDES shall:

A. Conduct on-going RTC (Regional Training Center) training sessions commensurate with availability of staff, time limitations and participants response. Sessions may be held either at the RTC or on-site locations.

B. Design and develop new training in response to Regional Office, SESA (State Employment Security Agencies) and CETA (Comprehensive Employment and Training Act) Prime Sponsor needs, within availability of staff and time limitations.

C. Provide, upon request of the Regional Office, training materials developed at the RTC.

D. Provide administrative assistance necessary for the operation of the RTC.

E. Consult with Regional Office, SESA and CETA Prime Sponsor staff concerning training design, methodology and techniques.

F. Assist SESA and CETA personnel in their development and delivery of training for a specific target group of these agencies, as requested and directed by Regional Office staff.

The agreement further provides that staff from MDES assigned to the Region VII Training Center shall remain MDES employees and upon completion of their assignment return to a comparable position with MDES. Funding is provided for this program by the Employment and Training Administration. This funding covers the cost of the MDES staff assigned to the Region VII Training Center, plus a 6% allowance for overhead. All other costs are to be met by the Region VII Training Center.

Third, pursuant to an agreement between the Department of Labor and MDES, the Department of Labor provides funds for the hiring and training by MDES of three bilingual persons for employment by MDES. Upon successful completion of their training, the bi-lingual trainees are placed with MDES to work primarily with bi-lingual applicants. The plaintiff argues that this is also a contractual relationship between MDES and the federal government, thereby bringing MDES under the jurisdiction of the Vietnam Veterans Act.

Defendants take issue with the position of plaintiff, arguing that each of the relationships described constitutes a grant agreement between MDES and the federal government, not a contractual relationship.

In 1978, Congress enacted the Federal Grant and Cooperative Agreement Act, 41 U.S.C. § 501 et seq. Among the purposes of the Act was:

---

4. The latest version of the agreement available to the Court was effective October 1, 1980, through September 30, 1981.

(1) to characterize the relationship between the Federal Government and contractors, State and local governments, and other recipients in the acquisition of property and services and in the furnishing of assistance by the Federal Government so as to promote a better understanding of Federal spending and help eliminate unnecessary administrative requirements on recipients of Federal awards;

(2) to establish Government-wide criteria for selection of appropriate legal instruments to achieve uniformity in the use by the executive agencies of such instruments, a clear definition of the relationship they reflect, and a better understanding of the responsibilities of the parties.

41 U.S.C. § 501(b)(1) and (2).

In furtherance of this purpose, this legislation sets forth criteria instructing federal agencies when procurement contracts should be used and when resort to grant agreements should be made. Regarding the use of procurement contracts, 41 U.S.C. § 503 provides:

Each executive agency shall use a type of procurement contract as the legal instrument reflecting a relationship between the Federal Government and a State or local government or other recipient—

(1) whenever the principal purpose of the instrument is the acquisition, by purchase, lease, or barter, of property or services for the direct benefit or use of the Federal Government; or

(2) whenever an executive agency determines in a specific instance that the use of a type of procurement contract is appropriate.

The use of grant agreements is governed by 41 U.S.C. § 504, which provides:

Each executive agency shall use a type of grant agreement as the legal instrument reflecting a relationship between the Federal Government and a State or local government or other recipient whenever—

(1) the principal purpose of the relationship is the transfer of money, property, services, or anything of value to the State or local government or other recipient in order to accomplish a public purpose of support or stimulation authorized by Federal statute, rather than acquisition, by purchase, lease, or barter, or property or services for the direct benefit or use of the Federal Government; and

(2) no substantial involvement is anticipated between the executive agency, acting for the Federal Government, and the State or local government or other recipient during performance of the contemplated activity.

Though the relationships described by plaintiff between MDES and the federal government existed prior to the enactment of 41 U.S.C. § 501 et seq., its provisions offer helpful guidance in determining the central issue of whether these relationships were contracts or grant agreements. *See Forsham v. Harris*, 445 U.S. 169, 180, 100 S.Ct. 978, 984, 63 L.Ed.2d 293 (1980); *University of Rochester v. Hartman*, 618 F.2d 170, 175 (2d Cir. 1980).

This issue appears to be one of first impression. The Vietnam Veterans Act was enacted only a few years ago and there is little case law interpreting its provisions. Neither the parties nor the Court, after its own independent search, have discovered any cases which specifically consider what constitutes a contract under 38 U.S.C. § 2012. Any holding in this case, however, must be limited to the narrower issue of whether any of the three specific relationships described by plaintiff constitutes a contractual relationship sufficient to qualify MDES as a contractor under 38 U.S.C. § 2012.

After a careful consideration of these three relationships, the Court finds that a contractual relationship does not exist between MDES and the federal government for purposes of 38 U.S.C. § 2012, and therefore, the Secretary of Labor does not have jurisdiction to hear plaintiff's complaint.

Two of the relationships are disposed of easily. The agreement between MDES and

the Department of Labor creating a system of public employment offices and a veteran's employment service in Missouri is more accurately described as a grant rather than a contract. The same is true for the agreement between MDES and the Department of Labor which provides funds for the hiring and training of bi-lingual employees for employment with MDES. The fruits of these agreements benefit the public at large. It is difficult to envision these as agreements for the furnishing to a federal agency of supplies or services or the use of real or personal property. 41 C.F.R. 60–250.2. The principal purpose of these agreements is not the acquisition or purchase of property or services which directly benefit the federal government. 41 U.S.C. § 503. The purpose of these agreements was to aid in the implementation of the policy underlying the Wagner-Peyser Act and other legislation related to it. That policy is to aid in the employment and placement of those without work. Federal funds received by MDES are used to further this broad policy. Any benefit the federal government receives from the expenditure of those funds is merely incidental to the greater benefit which inures to the public welfare. The same is true for the federal funds used by MDES to train and employ a certain number of bi-lingual staff members. The benefit from this expenditure goes to the system of public employment offices which can serve non-english speaking clientele better. The Court finds that the funds received by MDES from the federal government under these two agreements clearly constitute grants.

A more difficult question is raised by the agreement to provide MDES staff to the Region VII Training Center. Much of this difficulty is caused by the use of the term "contract" in the text of the agreement.[5] In other respects, however, the agreement resembles a grant more than a contract. There is no specific acquisition or purchase of property or services by a federal agency for its direct benefit. 41 U.S.C. § 503(1). Nor is there any substantial involvement by a federal agency with a state or local government during the performance of the activity contemplated by the agreement. 41 U.S.C. § 504(2).

The regulations promulgated under the Wagner-Peyser Act require states to maintain an effective program for the development and training of personnel. 20 C.F.R. 602.12. This is accomplished, in part at least, through the Region VII Training Center. The agreement between MDES and the Employment and Training Administration allows the Region VII Training Center to obtain personnel from MDES on a temporary basis for the purpose of operating its training programs. These programs train personnel for both state and federal employment service programs. The cost to MDES of providing staff personnel to the Training Center is then reimbursed by the Employment and Training Administration. The beneficiaries of this training are the state and federal agencies who employ the trainees. The Employment and Training Administration receives no direct benefit from its funding, unless it should happen to employ any of those trained at the Region VII Training Center. The Court finds that the primary purpose of this agreement is to aid in providing trained personnel for both state and federal public service employment programs. Realization of this purpose ultimately benefits the general public, not a particular federal agency.

The use of the term "contract" in the final paragraph of the agreement should not be conclusive of its legal nature. To make it so would be accepting form over substance, a result not favored by this Court. The substance of the agreement between MDES and the Employment and Training Administration is consistent with the criteria for a grant agreement set forth in 41 U.S.C. § 504. The Court finds that the agreement is a grant, not a contract.

---

5. The two most recent versions of the agreement available to the Court, those for the years 1979–80 and 1980–81, provide in the last paragraph of the agreement that "The *contract* or any part of it may be terminated by mutual agreement upon 90 days written notification by either agency." (emphasis added). The prior agreements do not contain this language.

Therefore, the Secretary of Labor does not have jurisdiction under 38 U.S.C. § 2012 to hear the complaint of plaintiff that MDES does not comply with the provisions of the Vietnam Veterans Act.

For the above-stated reasons, and for good cause appearing, it is hereby

ORDERED that the motion of plaintiff for summary judgment is denied, it is further

ORDERED that the motion of defendant for summary judgment is sustained.