TRINITY INDUSTRIES, INCORPORATED, Plaintiff–Appellant,

v.

Alexis M. HERMAN, Secretary, United States Department of Labor; Jerome Geathers, in his official capacity as District Director, Charlotte District, Office of Federal Contract Compliance Programs, United States Department of Labor, Defendants–Appellees.

No. 98–2129.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1999.

Decided April 12, 1999.

**ARGUED:** David Michael Curtis, Gardere & Wynne, L.L.P., Dallas, Texas, for Appellant. Timothy John Moran, United States Department of Justice, Washington, D.C., for Appellees. **ON BRIEF:** Laurie Lamb, Gardere & Wynne, L.L.P., Dallas, Texas, for Appellant. Bill Lann Lee, Acting Assistant Attorney General, Dennis J. Dimsey, United States Department of Justice, Washington, D.C.; Henry Solano, Solicitor, James D. Henry, Associate Solicitor, Willie Alexander, for Litigation, Beverly Dankowitz, Assistant for Litigation, United States Department of Labor, Washington, D.C., for Appellees.

Before WILKINS, MOTZ, and KING, Circuit Judges.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

The district court held that affirmative action reporting requirements generally applicable to a government contractor cover all of the contractor's facilities. The contractor appeals, contending that one of its facilities, which is assertedly autonomous and does not perform government contract work, is not subject to the reporting requirements. Because these requirements plainly apply to all facilities of a covered contractor unless the Secretary of Labor expressly waives them, which she has not done here, we affirm.

### I.

Under Section 503 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 793 (West Supp.1998); Section 402 of the Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRAA), 38 U.S.C.A. § 4212 (West Supp.1998); and Executive Order 11246, 30 Fed. Reg. 12319 (1965), the Secretary of Labor is authorized to enforce non–discrimination and affirmative action obligations on parties to government contracts. The Secretary has promulgated regulations to implement these laws, see 41 C.F.R. ch. 60 (1999) and has delegated certain enforcement duties to the Office of Federal Contract Compliance Programs (OFCCP) in the Department of Labor. 41 C.F.R. §§ 60–1.2, 60–1.20.

Pursuant to the Executive Order and statutes, a covered contractor must "take affirmative action to ensure that applicants are employed and that employees are

treated during their employment without regard to race, color, religion, sex, and national origin," Exec. Order 11246, and must "take affirmative action to employ and advance in employment" both "qualified individuals with disabilities," 29 U.S.C.A. § 793, and "qualified veterans of the Vietnam era," 38 U.S.C.A. § 4212(a). A contractor who employs fifty or more employees and contracts with the United States for payment of $50,000 or more must develop an affirmative action program *"for each of ·its establishments"* within 120 days of entering into a government contract. 41 C.F.R. §§ 60–1.40(a)–(b), 60–250.5(a), 60–741.40(a)–(b) (emphasis added). The OFCCP periodically reviews covered contractors to ensure their compliance with these non–discrimination and affirmative action requirements. *See* 41 C.F.R. §§ 60–1.20, 60–250.25, 60.741.60.

The Rehabilitation Act and the Executive Order expressly provide that the Secretary of Labor "may" waive these requirements and exempt a facility from them if she finds both that the facility is "in all respects separate and distinct from the activities of the ... contractor ... related to the performance of the contract," and that a waiver will "not interfere with or impede the effectuation" of the Order or the statute. *See* 29 U.S.C.A. § 793(c)(2)(A); Exec. Order 11246, § 204; *see also* 41 C.F.R. §§ 60–741.4(b)(3), 60–1–5(b)(2). Although VEVRAA itself contains no provision for waiver, the Secretary has established by regulation an identical waiver mechanism for exempting facilities from its requirements. *See* 41 C.F.R. § 60–250.3(a)(5).

Trinity Industries, a party to one or more contracts with the United States in the amount of $50,000 or more and an employer of fifty or more persons, concedes that these affirmative action reporting requirements generally apply to its operations. Trinity maintains, however, that a facility that it owns and operates in Asheville, North Carolina, which has no

involvement with Trinity's federal contract work, is exempt from these requirements.

In 1996, the Charlotte District Office of the OFCCP notified Trinity that its Asheville facility had been selected for compliance review under the Order and the statutes; this review involved examination of the facility's affirmative action program and supporting documentation. In response, Trinity wrote the District Office: "It is our position that the OFCCP lacks jurisdiction to conduct such a review. In addition, to the extent a request is required, the Trinity facility requests an exemption or waiver under the applicable regulations because the facility is not connected with any government contracts, but is in all respects separate and distinct from any activities related to the performance of such contracts." The District Office replied that it would "continue to process its review," that "[t]he Charlotte District Office does not have the authority to grant exemptions or waivers," and that "all request[s] for such consideration" must be submitted to the Deputy Assistant Secretary of Labor, whose name and address the District Office provided to Trinity. Trinity took no further action to obtain a waiver and refused to supply the requested affirmative action information.

In May 1997, the OFCCP filed an administrative complaint against Trinity seeking to compel compliance with the affirmative action reporting requirements. The administrative law judge found in favor of the OFCCP; the Administrative Review Board affirmed. Trinity filed suit in the district court contesting the Board's order, and the district court granted summary judgment in favor of the Secretary of Labor. Trinity then noted this appeal.

## II.

■ Trinity unquestionably is a covered contractor for purposes of the Order and the statutes; the affirmative action reporting requirements at issue here therefore apply to it. Trinity contends, however, that the district court erred by holding

that the reporting requirements cover its Asheville facility. Trinity maintains that the Asheville facility operates in all respects separate and distinct from activities related to Trinity's performance of its government contracts; that the Asheville facility is autonomous in organization, function, and management; and that it makes its own decisions concerning hiring, firing, discipline, discharges, promotions and pay increases. For these reasons, Trinity insists, the Asheville facility is "not subject to" OFCCP jurisdiction or the affirmative action reporting requirements.

The facts on which Trinity relies well may be significant. The Secretary, in her discretion, could determine that these facts qualify the Asheville facility for an exemption from the affirmative action reporting requirements. But nothing in the Order, the statutes, or the relevant regulations suggests that when a contractor fails to obtain an exemption or waiver, such facts nonetheless remove one of its facilities from OFCCP jurisdiction or automatically exempt it from compliance with the reporting requirements.

■ To the contrary, the waiver provisions make it plain that, in the absence of an express waiver or exemption, even facilities of a contractor that are not involved in work related to a government contract are subject to the reporting requirements. Trinity's apparent belief that a waiver is automatic for all assertedly autonomous facilities directly conflicts with the clear import of the controlling language. The Secretary is not required to grant waivers; rather she "may" do so in her discretion. Indeed, the Rehabilitation Act and the regulations implementing VEVRAA expressly provide that a waiver shall be considered "only upon the request of the contractor." 29 U.S.C.A. § 793(c)(2)(B); 41 C.F.R. § 60–250.3(a)(5). The Order implies as much by mandating that "in the absence of [ ] an exemption, all facilities shall be covered by the provisions of this Order." Exec. Order 11246, § 204. A contractor simply has no authority to de-

termine on its own, as Trinity has attempted to do here, that one of its facilities is "autonomous" and so not subject to the reporting requirements. Therefore, absent a waiver or exemption by the Secretary, the reporting requirements apply to Trinity's Asheville facility even if that facility is autonomous and entirely divorced from any activities related to Trinity's contracts with the federal government.

None of the authorities cited by Trinity supports its contrary position. Some are simply irrelevant. For example, since it is uncontroverted that Trinity's agreements with the United States are contracts, not subcontracts or grants, cases holding that the affirmative action requirements do not apply to subcontracts or grant agreements are inapposite. *See, e.g., Liberty Mutual Ins. Co. v. Friedman,* 639 F.2d 164 (4th Cir.1981) (subcontracts); *Hammond v. Donovan,* 538 F.Supp. 1106 (W.D.Mo.1982) (grants).

Similarly, because Trinity is not an "agency, instrumentality or subdivision" of a state or local government, it can find no support in the regulations that automatically exempt such entities from reporting requirements if they do not work on government contracts, 41 C.F.R. § 60–1.5(a)(4) (Exec. Order 11246); 41 C.F.R. § 60–741.4(a)(5) (Rehabilitation Act); 41 C.F.R. § 60–250.3(a)(4) (VEVRAA), or in the cases enforcing those regulations, *see, e.g., Partridge v. Reich,* 141 F.3d 920 (9th Cir.1998); *Board of Governors of the Univ. of N.C. v. Department of Labor,* 917 F.2d 812, 814 (4th Cir.1990). In fact, five years ago another appellate court explicitly rejected Trinity's attempt (through the same attorney that represents it in this case) to rely on cases and regulations involving state agencies. *See Trinity Indus., Inc. v. Reich,* 33 F.3d 942, 943 (8th Cir.1994).

Insofar as Trinity's authorities are relevant, they severely undercut its position. In *Board of Governors,* the University of North Carolina, a covered government contractor under the relevant regulations, contended that each of its campuses was a

separate state agency, and that therefore the requirements of the Order and the statutes did not apply to those campuses that were not themselves parties to government contracts. The holding of the case is, as noted above, not on point here because separate state agencies, unlike private parties, are automatically exempt from the affirmative action requirements if they do not participate in government contracts; but an important principle underlying that holding applies here. That principle is that the reporting requirements apply to all facilities belonging to, or constituting a part of, a single covered government contractor even if some of those facilities do not engage in government contract work. Tellingly, while this court in *Board of Governors* divided on the question of whether the campuses were separate state agencies, *id.* at 818; *id.* at 818–19 (Widener, J. dissenting), there was no disagreement on this principle.

Trinity's heavy reliance on a 1972 opinion of the Comptroller General is also misplaced. At the time when that opinion was issued, the Comptroller General had authority to rule on the applicability of the reporting requirements. The opinion cited by Trinity asserted that a separately incorporated subsidiary of a government contractor was not subject to the reporting requirements because its parent corporation, which held contracts with the federal government, did not exercise "actual control" over it. 52 Comp. Gen. 145 (1972). Even if we were to regard this opinion as controlling or persuasive, it would not assist Trinity. The Asheville facility is not separately incorporated, and is not an entity over which Trinity's control is merely "potential," rather than "actual." Rather, Trinity has stipulated that it "operates" the Asheville facility, and that it sets the personnel policies that are "implement[ed] by the Asheville facility." Trinity also acknowledges that the Asheville facility has control over hiring, promotion, and discharge decisions only "generally," indicating that Trinity exercises some control

over these matters. The Asheville facility would thus plainly be covered by the reporting requirements even under the decision of the Comptroller General.

The Board's determination that the reporting requirements of the Order and the statutes apply to the Asheville facility was reasonable, and the district court committed no error in affirming it.

### III.

■ The district court also held that Trinity failed to properly apply for a waiver, and that no "final agency action" on the waiver had been taken. *See* 5 U.S.C.A. § 704 (1998). In its initial brief, Trinity did not contest this ruling; not until its reply brief did Trinity assert that it applied for, and was denied, a waiver. Trinity has thus failed to properly raise this argument, *see, e.g., Cavallo v. Star Enter.,* 100 F.3d 1150, 1152 n. 2 (4th Cir.1996), but because the argument is so closely tied to the issues Trinity did raise, we will address it in the interest of justice.

Trinity contends that the OFCCP Charlotte District Office, the only OFCCP agency to which it broached the subject of a waiver, had the authority to grant the waiver and wrongfully failed to do so. Trinity further maintains that the fact that the OFCCP had taken final action on its entitlement to a waiver, whether through the District Office or otherwise, is demonstrated by the administrative law judge's finding that "Trinity requested a waiver for its Asheville facility, however, the OFCCP did not grant this exemption," and by the Board's affirmance of that finding.

■ The regulations that controlled at the time of Trinity's waiver request provided that only the Director of the OFCCP, 41 C.F.R. § 60–1.5(b)(2) (1997) (Executive Order 11,246); 41 C.F.R. § 60–250.3(a)(5) (1997) (VEVRAA), or the Deputy Assistant Secretary of Labor, 41 C.F.R. § 60–741.4(b) (1998) (Rehabilitation Act), could grant waiver requests. The regula-

tions have since been amended to make the Deputy Assistant Secretary solely responsible for granting waivers under the Order and both of the statutes, 41 C.F.R. § 60–1.5(b)(2) (1999) (Executive Order); 41 C.F.R. § 60–250.4 (1999) (VEVRAA); presumably, the District Office instructed Trinity to submit its general waiver request to the Deputy Assistant Secretary in anticipation of that change. Be that as it may, it is undisputed that Trinity never submitted a waiver request to either the Director of the OFCCP or the Deputy Assistant Secretary. Trinity's suggestion that because the OFCCP has delegated some of its authority to the local district offices, it must be considered to have delegated all of its authority, including authority to grant waivers, is ludicrous. Thus Trinity has no support for its contention that its submission of a waiver request to the Charlotte District Office was adequate.

 Nor has any final agency action ever been taken on Trinity's entitlement to a waiver. We consider the following factors in determining whether agency action is "final" under the Administrative Procedure Act: (1) whether the action is a definitive statement of the agency's position; (2) whether the action had the status of law and immediate compliance with its terms was expected; (3) whether the action had a direct impact on the day-to-day business of the plaintiff; and (4)whether a pre–enforcement challenge was calculated to speed enforcement and prevent piecemeal litigation. *See Natural Resources Defense Council, Inc. v. EPA,* 16 F.3d 1395, 1407 (4th Cir.1993); *see also* 5 U.S.C.A. § 704 (1996).

The Charlotte District Office's letter informing Trinity that it should submit its waiver request to the Deputy Assistant Secretary neither granted nor denied the request; the letter merely informed Trinity that it needed to submit its request to the Deputy Assistant Secretary in order for it to be considered. This instruction clearly constitutes the kind of "preliminary, procedural" agency action that the

Administrative Procedure Act distinguishes from "final agency action" and makes subject to review only in conjunction with review of such final agency action. 5 U.S.C.A. § 704. It certainly does not qualify as the agency's "definitive" position on Trinity's entitlement to exemption. *See Natural Resources Defense Council,* 16 F.3d at 1407.

Moreover, as we held above, Trinity was already subject to the requirements of the Order and the statutes at the time of the District Office's letter. The letter, therefore, had no "direct impact on the day-to-day business of" Trinity. *Id.* It did not alter Trinity's legal position, and it did not foreclose the company from obtaining full consideration of its entitlement to a waiver. Furthermore, judicial review of procedural directives like that issued by the District Office certainly would not "speed enforcement" of the Order or the statutes. *Id.* Rather, it would encourage the kind of "piecemeal litigation" that the Administrative Procedure Act's finality requirement was designed to prevent. *Id.; see Robishaw Eng'g, Inc. v. United States,* 891 F.Supp. 1134, 1150 (E.D.Va.1995).

Trinity contends, however, that the OFCCP District Office's continuing demand that the company comply with the affirmative action reporting requirements constituted a denial of its waiver request. In fact, that demand did not indicate that Trinity's waiver request had been or was being denied; it merely indicated that no waiver had yet been granted. Similarly, both the administrative law judge's statement that "Trinity requested a waiver for its Asheville facility, however, the OFCCP did not grant this exemption," and the Board's decision affirming it are entirely consistent with the unresolved status of Trinity's waiver request. We note that this conclusion does not subject Trinity to any inequitable consequences. Trinity can show no negligence on the part of the Secretary or her designees, and it cannot contend that some onerous or hidden procedural obstacle prevented it from obtaining substantive review and resolution of its

entitlement to a waiver. Rather, Trinity's (unsuccessful) litigation of similar issues before one of our sister circuits suggests that the company is well-informed of the need to obtain a waiver, and of the proper method for doing so. *See Trinity Indus.*, 33 F.3d at 942–43. Moreover, nothing prevents Trinity from prompting consideration of its entitlement to a waiver even now. A court must be particularly unwilling to regard an agency's normal enforcement procedures as "definitive" final agency action on an applicant's entitlement to a waiver when no substantive review of the issue has occurred, and when the fact that no such review has occurred is entirely the result of the applicant's unaccountable refusal to simply direct its application to a different individual.

The district court correctly held that no final agency action concerning waiver had been taken, and that it was therefore powerless to address the question of waiver.

### IV.

For the reasons set forth within, the judgment of the district court is in all respects

*AFFIRMED.*